# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRENDA PONSFORD, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 19-217 |
| ) | |
| v. ) | Judge Cathy Bissoon |
| ) | |
| MERCYHURST UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER

Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. Rule 12(b)(6) ("Def. MTD"), Doc. 3, will be granted.

Plaintiff alleges that she was improperly terminated by Defendant, giving rise to the following claims: (Count I) breach of contract under the common law of Pennsylvania and pursuant to Title 42, United States Code Section 1983, (Count II) violation of Plaintiff's property interest in continued employment under the Fourteenth Amendment; (Count III) violation of Plaintiff's due process rights under the Fifth Amendment rights and (Count IV) violation of Plaintiff's due process rights under the Pennsylvania constitution. Plaintiff's ability to succeed on the federal law claims (Counts II to IV) depends on Defendant's status as a state actor. Should Plaintiff's federal law claims be dismissed, the Court may decide to exercise or decline pendent jurisdiction over her state law claim.

For the following reasons, the Court finds that Defendant is not a state actor for the purposes of 42 U.S.C. § 1983 and will dismiss those claims. With the dismissal of the federal

law claims, the Court declines to exercise pendent jurisdiction over the state law claim in Count I and will not address that here.[1]

Both parties agree that the relevant standard for determining whether Defendant is a state actor is outlined by Kach v. Hose,[2] which found that determining whether a private entity's challenged action will be construed as the state's action depends on the following three-prong test:

> (1) Whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state;
>
> (2) Whether the private party has acted with the help of or in concert with state officials; and
>
> (3) Whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

---

[1] Plaintiff attempts to argue in her Brief in Opposition to Defendant's Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Pl. Opp. Brief"), Doc. 8, that diversity jurisdiction exists because she has resided in Knoxville, Tennessee, since August 31, 2019, and seeks permission to amend her complaint again to assert diversity jurisdiction. Pl. Opp. Brief at 20. As the Supreme Court has held, and this Circuit has applied, diversity jurisdiction is determined by the parties' citizenship status at the time of filing. See Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570-71 (2004); Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 104 (3d Cir. 2015). Consistent with Defendant's argument in its Reply to Plaintiff's Brief in Opposition to Motion to Dismiss, Doc. 9, ("Def. Reply"), the Court notes that Plaintiff's domicile at the time of filing her Complaint and Amended Complaint (April 12, 2019, and June 28, 2019, respectively) was Erie, Pennsylvania, and that Defendant is also a citizen of Pennsylvania. Def. Reply at p. 4-5; Complaint, Doc. 1-1, at ¶ 1; Amended Complaint, Doc. 1-6, at ¶ 1. Thus, Plaintiff's response that the Court should exercise diversity jurisdiction over Count I is unfounded, and her request is denied.

[2] The Court notes that Plaintiff also uses general language from cases preceding Kach to support her arguments, and emphasizes that the inquiry must be fact-specific, viewed in the totality of the circumstances, and that "strict adherence" to these elements is not the only way to determine whether a private entity can be found to be a state actor, but since she frames her Response as fulfilling all the tests proffered by Kach, the Court will structure this Order based on those tests as well. The Court will, however, also address Plaintiff's general arguments relying on cases that precede Kach at the end of this Order.

589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and citations omitted).

Plaintiff argues that the conduct at issue—her purported termination—was a result of a "symbiotic relationship" between Defendant and the state, demonstrating that Defendant's action was a state action, entitling her to relief under 42 U.S.C. § 1983. Amended Complaint at ¶¶ 27-29, 40-42, 53-56. Specifically, Plaintiff cites examples of Defendant's contracts with various federal government entities (such as the Department of Homeland Security and the Department of Veteran Affairs) both for services and training programs, Defendant's receipt of state grants and contracts with the state of Pennsylvania and Defendant's role in providing training programs to state employees to support her argument that Defendant is performing "public functions…primarily reserved for the federal government or State of Pennsylvania." Amended Complaint at ¶¶ 30-31, 43-44, and 57-58. According to Plaintiff, all these facts support her argument that Defendant was a "state actor" under each test set forth by Kach. Pl. Opp. Brief at p. 10.

She argues that three examples of training and educational programs provided by Defendant are examples fulfilling the first prong of Kach: Defendant's training program for Pennsylvania police officers to become an entry-level law enforcement officer in Pennsylvania, Defendant's Military Science Program, which trains students to become members of the military, and an assortment of educational programs. Id. at 11-13. All these programs, Plaintiff argues, are functions "primarily" left to the state, and indicate a "symbiotic" relationship between the state and Defendant. Plaintiff misreads Kach. This prong does not merely ask whether a

mutually beneficial relationship exists, but specifically asks whether the exercised powers are traditionally the exclusive prerogative of the state.[3]

As Defendant has emphasized, it is in the business of providing education and educational programs to individuals who may be employed by the state. Def. MTD at ¶ 22. This is not the same as exercising the powers of the state. Defendant may be providing supplementary education for police officers and members of the military. It is not itself engaging in police or military powers. Nor can individuals become police or military solely by completing the programs offered by Defendant—as Defendant aptly notes, these are programs for the benefit of individuals interested in law enforcement careers, not courses provided "as a proxy for state or local governments." Def. Reply at 2. Further, the "exercised power" here is providing additional education to government employees—not performance of those government employees' jobs. See id. at 1-2. And Plaintiff has adduced no factual support that education is an "exclusive prerogative of the state." Indeed, in her brief, she merely notes that "[e]ducation is once again a function *primarily* left to the State of Pennsylvania." Pl. Opp. Brief at 13 (emphasis added).[4]

Plaintiff then proceeds to argue that Defendant has acted with help of or in concert with state officials because it receives significant grants and contracts from the government,

---

[3] Plaintiff appears to be conflating the test under Kach with other cases. "Symbiotic" does not appear in Kach—but seems to be adopted from Krynicky v. University of Pittsburgh, which predates Kach. 742 F.2d 94 (3d. Cir. 1984). The Court addresses this question after reviewing Plaintiff's claims under Kach.

[4] The Court also notes that Plaintiff's own briefing undermines her here. She argues that the case cited by Defendant states that the private entity must be "performing a traditional, exclusive public function" and then goes on to argue that she has sufficiently alleged that Defendant has "performed various traditional, public functions" – conspicuously omitting the need for exclusivity. Pl. Opp. Brief at 13. Nowhere does she provide facts to show that exclusivity is not a requirement under Kach.

contributes to lobbying efforts, and includes public officials on its Board of Trustees. Id. at 13-14. Plaintiff argues again that the examples of Defendant receiving government money to provide training and functions left primarily to the government or state is another example of Defendant acting in concert with state officials. Id. at 15.

Once again, Plaintiff's arguments are unavailing. These fairly typical brushes any private entity may have with the state are not proof that Defendant was acting with help of or in concert with the state. Simply put, such interactions lack the ability to transform a private entity into a state actor. See, e.g., Osei v. La Salle University, 493 Fed. Appx. 292 (3d Cir. 2012).

Finally, Plaintiff's argument under the third prong in Kach is the least persuasive. Plaintiff argues that "multiple facts…show a close nexus between the Plaintiff and the State to prove Defendant is a 'state actor.'" Pl. Opp. Brief at 17. That argument wholly misreads Kach. The third prong of Kach notes that "state action will be found if there is a sufficiently close nexus between the state and the *challenged* action of the regulated entity so that the action may be fairly treated as that of the State itself." 589 F.3d at 648 (emphasis in original and internal citations and quotations omitted). The nexus that must be found is that between the state and the specific, challenged action of which Plaintiff complains—in this case, her termination. Thus, in order to prevail under this test, she must prove that a sufficiently close nexus exists between the government and her termination—not that such a nexus exists generally between the government and Defendant. See id. at 649 (holding that plaintiff "ignores that the focus of our inquiry is not on whether the state exercises control over a putative state actor as a general matter, but whether the state has exercised control over the particular conduct that gave rise to the plaintiff's alleged constitutional deprivation").

Plaintiff has not adequately addressed at all the fact that the state, even if arguably involved in Defendant's day-to-day operation, played absolutely no role in her termination. Indeed, the Third Circuit specifically highlights that "[a]cts of private contractors do not become acts of the State simply because they are performing public contracts. The State will be held responsible for a private decision only when it has *exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the State*." Id. (emphasis in original and internal quotation marks and citations omitted). Plaintiff has provided no evidence to demonstrate that either the state or federal government "exercised coercive power or has provided such significant encouragement…that the choice [to terminate her] must in law be deemed that of the State." She merely rehashes her general arguments that the government is so enmeshed in Defendant's affairs that all of Defendant's decisions can be attributed to the government, which is insufficient under this prong. See Def. Reply at 3.

Plaintiff's efforts to shoehorn her allegations into the teachings of Kach are unavailing. Moreover, her general attempts to show that state action exists under other case law in this Circuit does not fare any better. Plaintiff also attempts to argue that Krynicky, where the court determined that the University of Pittsburgh was a state actor for the purpose of 42 U.S.C. § 1983, is analogous. However, as emphasized by Defendant, the University of Pittsburgh was created as an instrumentality of the state, designated as a "State-related university," and provided annual appropriations that were used as specified by the state and kept in a specific account, among other close ties. Id. at 102. The court in Krynicky explicitly notes that legislative action would be required to untangle the University of Pittsburgh from the Commonwealth, and that the University not only receives funding and is subject to audits and state regulations but is an

instrumentality of the state.  Id. at 103.  This is not analogous in any way to this case.  There is no evidence that Defendant was created in the same fashion and no evidence that Defendant has the same statutory connections or obligations to the state.

Because Defendant is not a state actor, it need not reach the merits of Plaintiff's allegations, nor will it address Plaintiff's claim for monetary relief under the Pennsylvania Constitution.

Consistent with the foregoing, Defendant's Motion to Dismiss (**Doc. 3**) is **GRANTED** as to Counts II to IV of the Amended Complaint.  Counts II, III, and IV of the Amended Complaint are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff's request to amend her complaint to assert diversity jurisdiction is **DENIED**.  The Court declines to exercise pendent jurisdiction over Count I and **REMANDS FORTHWITH** Count I to the Court of Common Pleas, Erie County, Pennsylvania.

    IT IS SO ORDERED.


March 4, 2020                                                    s\Cathy Bissoon
                                                              Cathy Bissoon
                                                              United States District Judge

cc (via ECF email notification):

All Counsel of Record